UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BRANDON B. DREWRY, | ) |
| | ) |
|    Plaintiff | ) |
| | ) |
|    v. | )   1:16-cv-00075-GZS |
| | ) |
| MAINE DEPT. OF CORRECTIONS, | ) |
|      et als. | ) |
| | ) |
|    Defendants | ) |

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, defendants Harold Abbott, Troy Ross, Thomas Averill and Nathan Staples hereby move for summary judgment. As grounds for this motion, defendants state that there is no issue of material fact and that defendants are entitled to judgment as a matter of law. Specifically, defendants state:

    1. In the incident alleged in the Complaint, defendants Averill and Staples did not apply force maliciously and sadistically for the purpose of causing harm.

    2. As a matter of law, defendant Court is not liable based solely on the fact that he was the supervisor of Officers Averill and Staples.

    3. Defendant Court cannot be held liable for failing to intervene, as he was not present when the incident occurred.

    4. As a matter of law, defendants Abbott and Ross did not violate any due process rights of the plaintiff.

    5. Absent more than a *de minimis* physical injury, plaintiff may not recover damages for mental or emotional distress.

## Memorandum in Support of Motion

### FACTS

Brandon Drewry, a prisoner incarcerated at the Maine State Prison (MSP) brings this action pursuant to 42 USC § 1983 claiming violations of his rights under the Eighth and Fourteenth Amendments to the Constitution. Drewry's claims arise from an incident that occurred on December 11, 2014, when Drewry attempted to leave his housing unit contrary to the order of the unit officer, was restrained, and was then taken to the floor by defendants Averill and Staples and another officer when he resisted being placed in a cell. Drewry later faced disciplinary charges stemming from this incident and claims that his right to due process was violated when the hearing officer, defendant Abbott, refused to admit videotape evidence of the incident at his disciplinary hearing.

The affidavits of the defendants establish the following facts:

At the time of the incident, defendant Staples was employed as a corrections officer assigned to the Close custody unit at MSP. At approximately 7 a.m., he was in the zone control area, and over the intercom he heard Drewry tell the officer in Close E pod that he was going to the chow hall because he did not receive a breakfast tray. The pod officer told Drewry that he was on feed-in status and would not be allowed to go to the chow hall.

Drewry ignored this order and ran out of the pod without the officer's permission. The pod officer then requested that Drewry be stopped. Drewry got all the way to the front door of the Close unit when he was confronted by Officer Gath, who instructed him to return to the housing unit. Drewry repeatedly stated, "No" and kept walking toward the chow hall. Staples told Gath to apply handcuffs to Drewry, but Drewry continued to walk away. Staples then left zone control and told Drewry to turn around and cuff up, but he refused. Staples then took hold

of Drewry by the arm and told him to turn around and cuff up and, at that point, Drewry complied. Staples and two other officers then escorted Drewry to C pod, one officer on each arm and one behind.

At the time of the incident, defendant Averill was employed as a correctional officer assigned as the pod officer in C pod of the Close Custody Unit at MSP. C pod was used as an overflow pod for Close unit prisoners placed on Emergency Observation Status (EOS). At approximately 7 a.m., Averill was notified that he would be receiving a prisoner being placed in EOS. He went upstairs to the second tier and had the door to cell 206 opened and searched the cell before having the prisoner placed there.

Once Averill had finished searching the cell, staff escorted Drewry to the cell. When he reached the door, Drewry refused to enter the cell; he pushed back against the officers who were escorting him, attempted to turn, and physically resisted them. The officers took Drewry to the floor and attempted to place him in a controlled restraint. Drewry was held face down on the floor but continued to resist by tossing, rolling and kicking. His nose also started to bleed and he was spitting blood and moving his head back and forth. Because of the hazard posed by the blood, Staples attempted to control the movement of Drewry's head by placing his forearm across the back of Drewry's head. Averill attempted to control Drewry's legs by crossing them at the ankles and pushing them toward his buttocks to keep him from kicking.

Drewry was extremely agitated and verbally abusive toward the officers. Another officer was directed to bring in a spit mask (a mesh hood that is pulled down over the prisoner's face to prevent him from spitting but still allow him to breathe) and leg restraints. Once the spit mask and leg restraints were placed on Drewry, he was brought to his feet and brought out of C pod and into the hallway.

At the time of the incident, defendant Kevin Court was a correctional sergeant assigned as the supervisor of the Close Unit. He was in the Security Operations Center when he heard radio traffic that sounded as if an incident had taken place. He responded to Close C pod, where Staples and Averill were in the process of escorting Drewry out of C pod and into the hallway. The Close unit nurse attempted to examine Drewry, but he became irritated again and refused medical treatment several times. He became physically aggressive again and refused staff orders to face the wall. He was also bleeding slightly from his nose. Court obtained authorization from his supervisor to take Drewry to the Special Management Unit (SMU), and Drewry was placed in a portable restraint chair and transported to the SMU.

In the medical area of the SMU, Drewry was examined by a nurse. Aside from the blood from his nose, Drewry did not appear to Staples, Averill or Court to have sustained any injuries, and the medical examination was brief. The record authored by the nurse who examined Drewry indicates that no open wounds were observed on Drewry's face, that his nosebleed had stopped, and that he had a small, dime-size bruise under his right eyebrow. The nurse also observed small lacerations to the top of Drewry's left wrist with no active bleeding. Drewry informed the nurse that he had a history of frequent, severe nosebleeds that came on easily. Drewry was then strip searched and placed in a cell in B-wing of the SMU.

The officers involved in the incident used the minimum amount of force necessary to restrain Drewry, who was aggressive and potentially violent, and took appropriate actions to control him and to protect themselves.

Drewry received two separate disciplinary charges arising from his conduct that morning. In the first (MSP-2014-2094), he was charged with refusing to obey an order and leaving place

of assignment. This was based on the disciplinary incident report of Officer Clancy, the pod officer who told Drewry that he was not allowed to leave the unit to go to the chow hall. Defendant Harold Abbott conducted a disciplinary hearing, at which Officer Clancy's report was in evidence. At the hearing, Drewry claimed that Clancy never told him not to leave the pod or that he didn't hear the order. He did admit to leaving the pod. The hearing officer found Drewry guilty of the offense based on Officer Clancy's report. Drewry appealed this finding, but his appeal was denied by the warden's designee, defendant Troy Ross.

In the second discipline (MSP-2014-2096), Drewry was charged with Bodily Injury, Bodily Fluid, Disturbance and Order, Refusing to Obey.[1] These charges arose out of his refusal to return to the housing unit, his refusal to submit to restraints when ordered to do so, his physical resistance to being placed in a cell in C pod, and his spitting blood while restrained on the floor. The evidence consisted of the reports of defendants Averill and Court, and Officers Gordon and Gath. According to the record of the disciplinary hearing on December 31, Drewry denied that he spat at the officers or that he resisted staff, but he admitted that he did not go into the cell when told to do so. The hearing officer found him guilty of all charges based on the staff reports and Drewry's own statements. Drewry appealed the finding, but the hearing officer's decision was upheld on appeal by defendant Ross.

When he received initial notice of the disciplinary charges, Drewry requested that "video" be produced in evidence. In his appeal in MSP-2014-2096, Drewry asserted that he was not permitted to present both an overhead video and a handheld video of the incident. At the

---

[1] "Bodily Injury" is defined as "Inflicting bodily injury on oneself or another person or any attempt to inflict bodily injury on oneself or another person. "Body fluid" is defined as "Spitting, excreting, urinating on/at another individual, throwing any fluid appearing to be or stated to be a body fluid on/at another individual, or contaminating any item with any body fluid or any fluid appearing to be or stated to be a body fluid. Body fluid includes feces, urine, blood, saliva, vomit, semen, or any other human body fluid." "Disturbance" is defined as "Planning, attempting to create, or creating a disturbance involving no destruction of property or injury to another person or threat of such destruction or injury." Dept. of Cor. Policy 20.1, Prisoner Discipline, Procedure E.

5

time of the incident, there was only one overhead camera in Close C-pod, and it automatically made periodic sweeps of the unit. The camera could be stopped by the zone control officer and focused on a particular area of the pod. The zone control officer was in charge of monitoring the surveillance cameras in six housing units as well as visually monitoring the Close unit hallways. At that time, there were no cameras in the hallways.

The overhead surveillance camera automatically recorded video of its periodic sweeps. Video recordings made by the housing pod camera were automatically overwritten after approximately 48 hours unless saved. As the incident alleged in the complaint occurred quickly and without warning, there is no reason to believe that the zone control officer observed it or stopped the automatically rotating surveillance camera to focus on it. Any video that might have been captured of the incident was not saved, was overwritten within days after the incident and was no longer available after that.

As stated in Officer Gordon's report, she began recording the hand-held video only after Drewry was removed from C-pod.

## ARGUMENT

**1. In the incident alleged in the Complaint, defendants Averill and Staples did not apply force maliciously and sadistically for the purpose of causing harm.**

As to defendants Averill and Staples, Drewry's claim is that they used excessive force, violating Drewry's right under the Eighth Amendment to be free from cruel and unusual punishment. To succeed on this claim, Drewry must prove that the defendants applied force maliciously and sadistically, for the very purpose of causing harm, rather than as part of a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010). In

assessing this claim, the court must consider whether the officers acted with a sufficiently culpable state of mind as well as whether the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992), citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). While the absence of a significant physical injury is not dispositive of an excessive force claim, the extent of injury is relevant to whether the use of force was necessary and to the amount of force applied. *Wilkins v. Gaddy, supra*, at 40.

From the allegations in the complaint as well as the sworn statements of defendants Averill and Staples, the use of force of which Drewry complains was isolated to the officers' taking Drewry to the floor when he resisted entering the cell and physically restraining him until additional mechanical restraints and a spit mask could be brought. It is established by the affidavits of Staples and Averill that they did this in order to regain control of Drewry when he refused to enter the cell. Drewry apparently does not dispute that he resisted entering the cell, as he states in his complaint that when he was ordered to enter the cell, he instead took a step to his left; at his disciplinary hearing, he told the hearing officer that he was ordered to go into the cell and did not go into the cell. On these facts, Drewry has failed to establish the necessary subjective element of his claim, i.e., that the defendants were acting solely with the intention of inflicting pain, rather than as a response to Drewry's refusal to obey their order.

Likewise, Drewry has failed to show that the actions of the defendants were objectively sufficiently harmful to establish a constitutional violation. While it is undisputed that defendants were required to apply force to control the situation created by Drewry, the record establishes that the amount of force used was reasonably related to the objective of restoring and maintaining order and preventing injury to the officers themselves. Perhaps the strongest

evidence that the officers used only minimal force in attempting to restrain Drewry is the undisputed fact that Drewry sustained only *de minimis* injuries as a result of the incident: a small bruise above one eye, some small lacerations on his left wrist and a bloody nose.[2]

**2. As a matter of law, defendant Court is not liable based solely on the fact that he was the supervisor of Officers Averill and Staples.**

It is "undisputed" that liability under 42 U.S.C. § 1983 cannot be established solely on a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). "Absent vicarious liability, each Government official his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* In assessing whether a complaint adequately makes out a claim of supervisory liability, the court must disregard mere legal conclusions and accept as true only well- pleaded facts. *Sanchez v. Pereira-Castillo*, 590 F. 3d 31, 49 (1st Cir. 2009). Dismissal of supervisory defendants is appropriate where the complaint "…does little more than assert a legal conclusion about the involvement of the administrative defendants in the underlying constitutional violation." *Id.* Rather, the facts alleged must demonstrate an affirmative link between the behavior of the subordinate and the actions of the supervisor, such that the supervisor's conduct led inexorably to the subordinate's violation. *Feliciano-Hernandez v. Pereira-Castillo*, 663 F. 3d 527, 534 (1st Cir. 2011). Thus, conclusory allegations that a supervisory official failed to assure adequate monitoring, discipline, training and supervision, even when coupled with an allegation that such failure was done with deliberate indifference or reckless disregard of the plaintiff's rights, are not sufficient to withstand dismissal. *Id.;* c.*f.*,

---

[2] With regard to the bloody nose, defendants ask the court to take judicial notice of verified statements made by Drewry in another case filed with this court that he suffers from a medical condition, hereditary hemorrhagic telangiectasia, which causes spontaneous nosebleeds many times daily. *Drewry v. Correct Care Solutions*, Docket No. 1:14-cv-00392-GZS, Document 1-1; Document 7, p. 5; Document 29, p. 3 (D. Me.) Thus, the fact that Drewry's nose bled in this incident says nothing about the amount of force used by the officers.

*Hernandez v. Castillo,* 2010 WL 3372527, *9 (D.P.R.), *aff'd.,* 663 F. 3d 527 (complaint dismissed where it parroted supervisory standards with little or no factual enhancement tying defendant to plaintiff's constitutional injury.)

As to defendant Court, Drewry has alleged little more than that Court was the supervisor of Averill and Staples. He sets forth no facts on which to conclude that Court was involved in or directed the application of force to Drewry or that his actions otherwise led the officers to use force on this occasion. Moreover, although Drewry states that "it is more likely than not that [Averill and Staples] were not trained properly," he does not allege any facts at all regarding Court's responsibility for this alleged lack of training.

**3.  Defendant Court cannot be held liable for failing to intervene, as he was not present when the incident occurred.**

An officer who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under § 1983 for nonfeasance. *Gaudrealt v. Salem*, 923 F. 2d 203, 207, f.n. 3 (1st Cir, 1990). To establish liability for a failure to intervene in these circumstances, plaintiff must show that the defendant was present at the scene of the alleged use of excessive force when it occurred; that he actually observed the use of excessive force; and that he was in a position where he could realistically prevent the use of excessive force. *Davis v. Rennie*, 264 F. 3d 86, 97 (1st Cir. 2001).

As stated above, based on the allegations in the complaint and the facts established in the summary judgment record, the claim of excessive force in this case is confined to the actions of defendants Staples and Averill after Drewry refused their order to enter the cell. Defendant Court's affidavit establishes that he was not in C pod when this occurred and that he entered C

pod only after Drewry had been restrained and was being escorted out of the pod. As a matter of law, Court cannot be held liable for failing to intervene in the incident.

**4. As a matter of law, defendants Abbott and Ross did not violate any due process rights of the plaintiff.**

As defendants have previously argued, a prisoner's liberty interest protected by the Due Process clause "…will be generally limited to freedom from restraint which…imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 487 (1995). As expressed in their first motion for summary judgment, it is the position of the defendants that none of the disciplinary sanctions imposed on Drewry as a result of his actions in this case constituted an atypical and significant hardship, and that due process protections therefore did not apply to the disciplinary proceedings to which he was subject.

When due process does apply, prisoners are entitled to certain minimal protections in the context of disciplinary proceedings: adequate advance notice of the charges; an opportunity to appear, call witnesses and produce rebuttal evidence; and a written statement of the evidence relied on by the factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564-566 (1974); *Brown v. Corsini*, 657 F. Supp. 2d 296 (D. Mass. 2009).

The right of a prisoner to introduce evidence is not unlimited, and hearing boards have great discretion in declining to call witnesses whose testimony would be irrelevant or unnecessary. *Figueroa v. Vose*, 57 F. 3d 1061 (1st Cir. 1995) (table); 1995 WL 352819; *Smith v. Mass. Dept. of Corr.* 936 F. 2d 1390, 1399 (1st Cir. 1991) (noting that prisoner challenging refusal to call witness must show officials "clearly abused their considerable discretion.") The

requirements of due process are satisfied if some evidence in the record supports the decision by officials to impose disciplinary sanctions. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The relevant question is whether there is any evidence in the record that could support the conclusion reached by the fact finder. *Id.*

The disciplinary hearings at issue in this case clearly met constitutional due process standards. Drewry's single complaint is that he was denied the ability to review and admit into evidence videotape recordings of the incident. In his complaint, Drewry specifies that he was not allowed to view a recording by the overhead surveillance camera in C pod depicting the incident, as well as a recording taken by Officer Gordon with a hand held camera. Contrary to Drewry's unsupported assertions, a video recording from the overhead surveillance camera in C pod depicting the alleged incident does not exist and did not exist at the time the disciplinary hearings took place. Moreover, Officer Gordon's report (submitted in evidence in MSP-2014-2096) makes it clear that the video she took started at a point after the alleged use of excessive force, when Drewry had been removed from C-pod. Because the disciplinary charges related to Drewry's resistance and the officers' placement and restraint of Drewry on the floor, video of occurrences after this incident ended was clearly irrelevant and properly excluded from the hearing record.

Since the only allegation against defendant Ross is that he reviewed and approved Abbott's decision, and the hearing conducted by Abbott suffered from no constitutional infirmity, Ross cannot be held liable to the plaintiff. *See, Burrell v. Hampshire County*, 307 F. 3d 1, 9-10 (1st Cir. 2002) (failure to prove that subordinates violated prisoner's constitutional rights dooms claim against superior).

**5.  Absent more than a *de minimis* physical injury, plaintiff may not recover damages for mental or emotional distress.**

Although the absence of a significant physical injury is not dispositive of an excessive force claim, *Wilkins v. Gaddy, supra*, it is dispositive of whether the plaintiff can recover damages for mental or emotional distress.

The Prison Litigation Reform Act states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  In *Siglar v. Hightower*, 112 F. 3d 191, 193 (5th Cir. 1997), the Court of Appeals interpreted §1997e(e) as requiring an injury that is more than *de minimis*, although the injury need not be significant.  In that case, it was alleged that a guard twisted plaintiff inmate's arm behind his back and twisted his ear, causing the ear to be bruised for three days.  The court held that this injury was *de minimis*, and that the inmate's claim for emotional distress damages was barred by the PLRA. The *de minimis* interpretation of *Siglar* has since been adopted in several other circuits.  *Mitchell v. Horn*, 318 F. 3d 523 (3d Cir. 2003) (joining Fifth, Ninth and Eleventh Circuits in adopting *de minimis* formulation.)  *C.f.*, *Oliver v. Keller*, 289 F. 3d 623 (9th Cir. 2002) (severe back pain from cramped holding cell with no bed, being chilled to the bone by excessive air conditioning); *Pearson v. Wellborn*, 471 F. 3d 732 (7th Cir. 2006) (loss of fifty pounds due to emotional distress of retaliatory segregated confinement); *Alexander v. Tippah County*, 351 F. 3d 626 (5th Cir. 2003) (vomiting from smell of raw sewage in unsanitary cell);  *Glosson v. Morales,* 469 F. Supp. 827, 834 (S.D. Cal. 2007 (minor abrasion on knee, scratch on chin, two minor bumps on head); *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) ("A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care

professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc…")
*Marino v. Commissioner*, 2009 WL 1150104 (D. Me.) (recognizing that PLRA requires physical injury, not just physical pain.)

In this case, plaintiff's physical injuries - a small bruise over one eye, some minor lacerations above one wrist and a nosebleed – cannot be characterized as other than minimal. Pursuant to the PLRA, in light of this evidence, plaintiff may not be awarded damages for mental or emotional distress arising from the incident that forms the basis of the complaint.

## Conclusion

For the reasons stated above, the court should grant summary judgment to the defendants. Should the matter be allowed to proceed on any of plaintiff's claims, the court should rule that plaintiff may not be awarded damages for mental or emotional distress.

April 26, 2017                                    ___/s/ James E. Fortin____
                                                  James E. Fortin
                                                  Assistant Attorney General
                                                  James.Fortin@maine.gov

Office of the Attorney General
Six State House Station
Augusta, ME 04333
626-8800

Certificate of Service

The undersigned hereby certifies that he electronically filed the above document with the Clerk of Court using the CM/ECF system, and that he mailed a copy, postage prepaid to the following:

Brandon Drewry
Maine State Prison
807 Cushing Road
Warren, ME 04864

April 26, 2017                                    /s/ James E. Fortin
                                                  James E. Fortin
                                                  Assistant Attorney General

**NOTICE**

Plaintiff's attention is directed to Local Rule 56(c), which requires that a party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts in conformance with the requirements of Local Rule 56(c). Facts contained in the moving party's statement of material facts may be deemed admitted unless properly controverted.