UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRANDON B. DREWRY, | ) |
| Plaintiff | ) ) ) |
| v. | ) 1:16-cv-00075-GZS ) |
| MAINE DEPARTMENT OF CORRECTIONS, et al., | ) ) ) ) |
| Defendants | ) |

**RECOMMENDED DECISION ON DEFENDANTS' SECOND
MOTION FOR SUMMARY JUDGMENT AND
ORDER ON MOTION TO COMPEL**

In this action, Plaintiff Brandon Drewry, a prisoner at the Maine State Prison, alleges that Defendants Thomas Averill, Kevin Court, and Nathan Staples subjected him to cruel and unusual punishment, and that Defendants Harold Abbott and Troy Ross denied him due process during disciplinary proceedings.

The matter is before the Court on Plaintiff's Motion to Compel Discovery (ECF No. 97) and Defendants' Second Motion for Summary Judgment. (ECF No. 87.) Following a review of the motions and the record, I deny the motion to compel. In addition, I recommend the Court grant the motion for summary judgment.

### I. PROCEDURAL BACKGROUND

Plaintiff has not filed a response in opposition to Defendants' motion for summary judgment. Plaintiff repeatedly asserted that he lacks the resources or information to file a response to Defendants' motion. Plaintiff's contentions are unavailing. The Court has

permitted Plaintiff more than sufficient time to respond to the motion. Rather than file a response to the motion, Plaintiff has filed many other documents. Defendants filed the motion for summary judgment on April 26, 2017. Plaintiff's response, therefore, was due to be filed by May 17, 2017. The court docket reflects the following relevant filings after the filing of the motion for summary judgment:

1. On May 8, 2017, Plaintiff requested an extension of time to respond to the motion for summary judgment. (ECF No. 91.)

2. On May 11, 2017, the Court granted Plaintiff's motion, and extended Plaintiff's response deadline to June 7, 2017. (ECF No. 92.)

3. On May 24, 2017, Plaintiff filed a motion to compel discovery. (ECF No. 97.)

4. On June 5, 2017, Plaintiff filed a motion to extend the deadline to respond to the motion for summary judgment. (ECF No. 101.)

5. On June 6, 2017, the Court extended the deadline for Plaintiff to respond to the motion for summary judgment to June 30, 2017. (ECF No. 102.)

6. On June 13, 2017, Defendants filed their response to Plaintiff's motion to compel. The deadline for Plaintiff's reply in support of the motion to compel was established as June 27, 2017. (ECF No. 103.)

7. On June 23, 2017, Plaintiff filed a motion to extend the deadline to file a reply in support of the motion to compel. (ECF No. 104.)

8. On June 24, 2017, the Court extended the deadline for Plaintiff to file a reply in support of the motion to compel to July 11, 2017. (ECF No. 105.)

9. On July 13, 2017, Plaintiff moved to extend the deadlines for his response to the motion for summary judgment and his reply in support of his motion to compel. (ECF No. 106.)

10. On July 14, 2017, the Court granted Plaintiff's motion, extended the deadline for both filings to August 1, 2017, and in its order wrote: "Given the extensions previously granted, absent extraordinary circumstances, the Court would not expect to grant any further extensions of time." (ECF No. 107.)

11. On July 31, 2017, Plaintiff filed an objection to the Court's July 14, 2017, Order extending his filings deadline to August 1, 2017. (ECF No. 110.) On August 18, 2017, the Court denied the objection. (ECF No. 114.)

12. On July 31, 2017, Plaintiff filed a motion seeking to extend the deadline for his response to the motion for summary judgment and his reply in support of his motion to compel. (ECF No. 111.) On August 3, 2017, Plaintiff filed a motion to stay proceedings. (ECF No. 113.) On August 28 and September 5, 2017, the Court denied the motions. (ECF Nos. 116, 117.)

13. On September 25, 2017, Plaintiff filed an interlocutory appeal to challenge the Court's order denying the requested extension. (ECF No. 122.) On October 27, 2017, the Court of Appeals for the First Circuit dismissed the appeal. (ECF No. 135.)

14. On September 29, 2017, Plaintiff filed an objection to the order denying his motion to stay. (ECF No. 129.) The Court denied the objection on October 16, 2017. (ECF

No. 132.)

15. On October 23, 2017, Plaintiff filed a motion to extend the deadline to object to an order (ECF No. 117) denying his request for an extension of time. (ECF No. 133.) On October 25, 2017, the Court extended the time to November 3, 2017, for Plaintiff to file his objection for his response to the motion for summary judgment. (ECF No. 133.) Plaintiff did not file an objection.

16. On November 3, 2017, Plaintiff filed an interlocutory appeal from the Court's order denying his motion to stay. (ECF No. 136.)

17. On November 6, 2017, Plaintiff filed a motion to extend the time to file an objection to the Court's order denying him additional time to respond to the motion for summary judgment. (ECF No. 141.)

18. On November 9, 2017, the Court denied the motion to extend time. (ECF No. 142.)

## II. PLAINTIFF'S MOTION TO COMPEL DISCOVERY

The discovery period closed on April 7, 2017. Plaintiff previously filed a motion to extend the discovery period (ECF No. 79), which motion the Court denied on April 13, 2017. In its order denying the request, the Court noted that Plaintiff had "not identified any specific issues on which he believe[d] expert testimony [was] necessary or any issues on which he was unable to conduct discovery in this matter." (ECF No. 80.)

Plaintiff filed the pending motion to compel discovery on May 24, 2017. (ECF No. 97.) Through his motion to compel, Plaintiff requests video recordings, information related to camera placement and video storage practices, certain personnel records of the defendant

officers, and the names of all prisoners and staff members present in the location (C-Pod) where the incident that is the subject of Plaintiff's complaint occurred. (ECF Nos. 97-2, 97-3, 97-4.)

In this District, a civil litigant must obtain leave of court to file a discovery motion. D. Me. Loc. R. 26(b). Plaintiff did not obtain prior approval for his motion.[1] In addition, Plaintiff's motion was not filed timely because Plaintiff filed it after the expiration of the discovery period. Furthermore, to the extent Plaintiff seeks video recordings and related information, the Court, in addressing an earlier motion, determined that Plaintiff had not presented sufficient evidence to establish that Defendants had additional video recordings. (Order, ECF No. 55.)

Because Plaintiff has not complied with the requirements of Local Rule 26(b), because Plaintiff filed the motion after the close of discovery, and because the Court has already addressed at least one of the issues raised by the motion, Plaintiff's motion to compel is denied.

---

[1] The Court has informed Plaintiff on more than one occasion that leave is required to file a motion to compel discovery. For example, in an order dated January 26, 2017, the Court reiterated the requirements of the Rule. (ECF No. 54.) Plaintiff evidently was previously aware of the requirement because on November 21, 2016, he requested leave to file a motion to compel. (ECF No. 45.) In that motion, Plaintiff asserted that he believed Defendants were withholding video evidence. The motion and response revealed that Defendants produced a video recording taken from a hand-held camera. The video started after the officers removed Plaintiff from C-pod, where Plaintiff was assigned. Defendants informed the Court that they did not possess any other video of the incident because, although there was a camera in C-pod capable of capturing the incident, it would have required someone to direct the camera from a remote location. Furthermore, the storage media for the camera is automatically overwritten after approximately 48 hours. Defendants informed the Court that there was no video evidence of events in C-pod, and that there was no reason to believe the camera had ever been trained on Plaintiff and the officers present in C-pod during the incident. (ECF No. 46 at 2.) Based on the parties' presentations, the Court denied Plaintiff leave to file a motion to compel because Plaintiff lacked a reliable basis upon which to contend Defendants were withholding evidence. (ECF Nos. 55, 63.)

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Through their second motion for summary judgment, Defendants Averill and Staples argue they are entitled to summary judgment because the record cannot support Plaintiff's claim of cruel and unusual punishment; Defendant Court argues he is entitled to summary judgment because he was not present at the relevant time and the record lacks support for supervisory liability; and Defendants Abbott and Ross argue they are entitled to summary judgment on the due process claim because the evidence Plaintiff contends should have been produced was unavailable. Defendants also contend Plaintiff cannot recover damages for mental or emotional distress because he did not suffer more than a de minimis physical injury.

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If a court's review

of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**B.     Background Facts**

The facts are drawn from Defendants' statement of material facts (ECF No. 88), Plaintiff's complaint signed under penalty of perjury (ECF No. 1), and Plaintiff's amended complaint signed under penalty of perjury (ECF No. 51).[2]

---

[2] In support of their motion for summary judgment, Defendants filed a statement of material facts setting forth the background facts upon which their motion is based. Local Rule 56 requires that factual assertions in support of or in opposition to a motion for summary judgment be set forth in a separate statement of material facts. D. Me. Loc. R. 56(a), (b), (f). Defendants have complied with the Rule. Plaintiff has not filed an opposing statement of material facts as required under Local Rule 56(c). Because Plaintiff has not filed an opposing statement, and because Defendants' statements are supported by record citations, the factual assertions set forth in Defendants' statement are deemed admitted. *See* D. Me. Loc. R. 56(f). However, the Court "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days." *NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 7 – 8 (1st Cir. 2002). Instead, the Court must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the context of summary judgment, this Court has observed that a prisoner's nonconforming summary judgment submission should be reviewed by the Court and that the facts set forth in a verified complaint or prisoner affidavit should be considered. *Clarke v. Blais*, 473 F. Supp. 2d 124, 128 (D. Me. 2007). In this case, therefore, the summary judgment record consists of the Local Rule 56 record and Plaintiff's sworn statements of record.

1. *Use of force*

Plaintiff alleges that corrections officers assaulted him on December 11, 2014. Defendants do not dispute that force was used, but maintain the force was constitutionally permissible.

   a. Defendants' Statements of Fact

On December 11, 2014, Defendant Staples worked as a corrections officer assigned to the close custody unit at the Maine State Prison (MSP). At approximately 7 a.m., he was in the zone control area, and heard over the intercom Plaintiff tell the officer in close E-pod that he was going to get a breakfast tray. The pod officer told Plaintiff that he was not permitted to leave. (Defendants' Statement of Material Facts ¶ 1.) Plaintiff nevertheless left the pod running without the officer's permission. The pod officer requested that Plaintiff be stopped. When Plaintiff got to the front door of the unit, Officer Gath confronted him and instructed him to return to the housing unit. Plaintiff repeatedly stated, "No," and he kept walking. Defendant Staples told Officer Gath to apply handcuffs to Plaintiff, but Plaintiff continued to walk away. (*Id.* ¶ 2.)

Defendant Staples left zone control and told Plaintiff to turn around for handcuffs to be placed on him. Plaintiff refused. Defendant Staples then took Plaintiff by the arm and told him to turn around for the placement of handcuffs and, at that point, Plaintiff complied. (*Id.* ¶ 3.)

At the time of the incident, Defendant Averill was a correctional officer assigned as the pod officer in C-pod of the close custody unit at MSP. At the time, C-pod was used as

8

an overflow pod for close unit prisoners placed on Emergency Observation Status (EOS). (*Id.* ¶ 5.) At approximately 7 a.m., Defendant Averill was notified that he was to receive an EOS prisoner. He arranged for cell 206 to be opened. (*Id.*)

Defendant Staples and two other officers escorted Plaintiff to C-pod, with one officer on each arm and one walking behind. The pod officer directed them to place Plaintiff in cell 206. When they reached the cell, Plaintiff resisted. He attempted to turn, place his foot on the door frame, and push back against the officers. (*Id.* ¶ 4.)

The officers took Plaintiff to the floor and attempted to place him in a controlled restraint. Plaintiff was held face down on the floor, but continued to resist by tossing, rolling and kicking. His nose also started to bleed and he was spitting blood and moving his head back and forth. Because of the hazard posed by the blood, Defendant Staples attempted to control the movement of Plaintiff's head by placing his forearm across the back of Plaintiff's head. Defendant Averill attempted to control Plaintiff's legs by crossing them at the ankles and pushing them back to prevent him from kicking. (*Id.* ¶ 7.)

Because of Plaintiff's conduct, an officer was directed to get a spit mask (a mesh hood that is pulled down over the prisoner's face to prevent him from spitting but still allow him to breathe) and leg restraints. After the spit mask and leg restraints were placed on Plaintiff, he was brought to his feet and led out of C-pod. (*Id.* ¶ 8.) Defendant Court, a correctional sergeant assigned as the supervisor of the close unit, heard the radio traffic about the incident, and responded to C-pod, where Defendants Staples and Averill were in the process of escorting Plaintiff out of C-pod. (*Id.* ¶ 9.)

After Plaintiff was removed from C-Pod, the close unit nurse attempted to examine Plaintiff. Plaintiff became irritated and refused medical treatment several times. Plaintiff became physically aggressive and refused staff orders. Defendant Court obtained authorization from his supervisor to take Plaintiff to the Special Management Unit (SMU). The officers placed Plaintiff in a portable restraint chair and transported him to the SMU. (*Id.* ¶ 10.)

A nurse examined Plaintiff in the medical area of the SMU. Other than the blood from his nose, Plaintiff did not appear to Defendants Staples, Averill and Court to have sustained any injuries. (*Id.* ¶ 11.) According to the treatment record, Plaintiff did not have an open wound on his face, his nosebleed had stopped, he had a small bruise under his right eyebrow, and he had small lacerations on the top of his left wrist with no active bleeding. Plaintiff also informed the nurse that he had a history of frequent, severe nosebleeds that came on easily. (*Id.* ¶ 12.)

b. Plaintiff's Verified Statements in Complaint/Amended Complaint

Plaintiff stated that after being ordered to enter cell 206, he "took one step to his left to address the officer to ask why this needed to be done when all [he] was doing was simply seeking to get his breakfast," and then Defendant Staples and others "threw" him to the ground. (Complaint ¶ 1, ECF No. 1-1, PageID # 4.) Plaintiff asserts his nose began to bleed from the impact of his head striking the ground, and that an officer sat on his handcuffed hands, which were behind Plaintiff's back, thereby pinning Plaintiff to the floor. Additionally, Officer Staples knelt against Plaintiff's head. (*Id.*) When Plaintiff

10

informed the officers he could not breathe, an officer responded that Plaintiff could breathe because he was talking. (*Id.*) Plaintiff remained on the ground for approximately two minutes and was lifted up after the spit mask was placed over his face. Plaintiff asserts that he experienced "great pain" during the incident. (*Id.*) Plaintiff maintains that he "did not spit – even inadvertently – at anyone." (*Id.* ¶ 3.)

Plaintiff also asserts that Defendant Court was present "throughout the assault – use of excessive force," and that he should have intervened immediately to stop the application of force. (ECF No. 51 ¶ 2, PageID # 297.) According to Plaintiff, he "made no verbal or physical threat whatsoever to the … officers." (*Id.*)

   *2.   Due process*

Due to the incident, Plaintiff received two separate disciplinary charges. In one disciplinary matter (MSP-2014-2094), Plaintiff was charged with refusing to obey an order and leaving place of assignment. Officer Clancy, the officer who told Plaintiff that he could not leave to the chow hall, prepared the disciplinary incident report. Defendant Abbott conducted the disciplinary hearing. Officer Clancy's report was part of the evidentiary record. At the hearing, Plaintiff claimed that Officer Clancy never told him not to leave the pod or that he did not hear the order. Plaintiff admitted that he left the pod. Defendant Abbott found Plaintiff guilty of the offense. Plaintiff appealed from the finding; Defendant Ross denied the appeal. (*Id.* ¶ 14.)

In the second disciplinary matter (MSP-2014-2096), Plaintiff was charged with Bodily Injury, Bodily Fluid, Disturbance and Order, Refusing to Obey. The charges

resulted from Plaintiff's refusal to return to the housing unit, his refusal to submit to restraints when ordered, his physical resistance to being placed in a cell in C-pod, and his spitting blood while restrained on the floor. The evidence consisted of the reports of Defendants Averill and Court, and Officers Gordon and Gath. According to the record of the disciplinary hearing, Plaintiff denied that he spat at the officers or that he resisted staff, but he admitted that he did not go into the cell when directed. The hearing officer found Plaintiff guilty of the charges. Plaintiff appealed from the finding, and Defendant Ross upheld the decision. (*Id.* ¶ 15.)

When he received notice of the disciplinary charges, Plaintiff requested that "video" be produced in evidence. In his appeal in MSP-2014-2096, Plaintiff argued that he was not permitted to present video (overhead and handheld) of the incident. (*Id.* ¶ 16.) According to Defendant Ross, there was only one surveillance camera in close C-pod at the time, an overhead rotary camera that automatically made periodic circular sweeps of the unit. A zone control officer located in a control room physically separated from the housing pod had the ability to operate the camera. The zone control officer was responsible for monitoring the surveillance cameras in six housing units, including C-pod. The officer would also visually monitor the close unit hallways. At the time, there were no cameras in the hallways. (*Id.* ¶ 18.)

The overhead surveillance camera in the close C-pod automatically recorded video of its periodic sweeps. Video recordings made by the housing pod camera were automatically overwritten after approximately 48 hours. Any video of the incident that

might have been captured by the surveillance camera was not saved, and was overwritten within days after the incident. (*Id.* ¶ 19.) Officer Gordon took a hand-held video, but only after officers removed Plaintiff from C-pod to escort him to the SMU. (*Id.* ¶ 20.)

**C.  Discussion**

   *1.  Use of force*

Because Plaintiff is serving a sentence following conviction, Plaintiff's claim is governed by standards developed under the Eighth Amendment Cruel and Unusual Punishments Clause. *Wilson v. Seiter*, 501 U.S. 294, 296 (1991). "Generally speaking, after incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. The critical question ... is whether the force was applied maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline." *Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005) (quotation marks and citation omitted).

While the standard for liability under the Eighth Amendment involves a subjective inquiry, objective considerations inform the inquiry. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9 – 10 (1992) (some internal quotation marks omitted). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 – 38 (2010) (per curiam). Additionally,

the Court of Appeals for the First Circuit has observed that an unlawful subjective intent is often inferred by weighing the amount of force used against the nature of the prisoner's conduct. *Unwin v. Campbell*, 863 F.2d 124, 129 – 30 (1st Cir. 1988), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995).

Here, the undisputed record establishes that Plaintiff's conduct justified the use of force to place Plaintiff in his assigned cell. Although in his verified complaint and amended complaint Plaintiff asserts that he was thrown to the ground in handcuffs in a way that caused his nose to bleed and made it difficult to breathe, Plaintiff's sworn declarations do not directly refute most[3] of the circumstances that preceded the use of force. That is, according to the uncontroverted record, Plaintiff defied an order to remain in his pod, ran toward the cafeteria, refused to be placed in handcuffs, physically resisted efforts to place him in a cell, and kicked when corrections officers were attempting to subdue him. Under the circumstances, a reasonable fact finder could not find the force "was applied maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline," *Skinner*, 430 F.3d at 488, or that the nature of the force employed was a kind repugnant to the conscience of mankind, *Hudson*, 503 U.S. at 9. The nature and extent of the injury also demonstrate that "[t]he force employed was appropriate to the task at hand." *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir.

---

[3] Plaintiff declares that he did not spit. (Complaint ¶ 3.) Assuming this is true, given the presence of blood, Defendants' exercise of control over the movement of Plaintiff's head and their use of a spit mask were appropriate measures and did not rise to the level of malicious or sadistic conduct.

14

2006) (affirming entry of summary judgment in case involving "relatively minor scrapes and bruises"); *see also*, *e.g.*, *Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) ("minor lacerations and cuts"); *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001) (pain, swelling, and bruising).[4] Although Plaintiff suffered a nosebleed, Plaintiff conceded that his nose bleeds easily. In fact, in a separate matter, Plaintiff has alleged that the prison's health care providers have failed to treat properly a medical condition from which he suffers, hereditary hemorrhagic telangiectasia, which causes frequent spontaneous nosebleeds. *See Drewry v. Correct Care Solutions*, 1:14-cv-00392-GZS.[5] Plaintiff's other injuries, a small bruise under his right eyebrow and small lacerations on his left wrist with no bleeding, do not suggest a constitutionally impermissible degree of force was used.

Because Plaintiff cannot prevail on his claim against Defendants Averill and Staples, he cannot prevail on his supervisory/failure to intervene claim against Defendant Court. *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 338 (1st Cir. 2008); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 – 82 (1st Cir. 1994).

---

[4] It is the "nature of the force rather than the extent of the injury" that drives the analysis, *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam), but the absence of appreciable injury is a relevant criterion. *Hudson*, 503 U.S. at 7, 10 (recognizing claim where injuries included not only bruising but "loosened teeth, and a cracked dental plate"). *See also Bastien v. Goddard*, 279 F.3d 10, 14 & n.6 (1st Cir. 2002) (vacating jury verdict for defendant based on erroneous instruction that arrestee plaintiff was required to prove "serious injury," relying on teaching of *Hudson*).

[5] *See In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 & n.2 (1st Cir. 1999) (explaining that a court may take judicial notice of its own docket).

*2. Due process*

Plaintiff assets that Defendants deprived him of due process of law during his disciplinary hearing and on appeal, because they refused to gather and review readily available video evidence that would have exonerated him of the bodily fluids charge. Where an interest in liberty or property is at stake, a prisoner has a right to present documentary evidence in defense of disciplinary charges provided the proposed evidentiary presentation is consistent with institutional safety and correctional goals. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 563 – 66 (1974). The qualified right to present documentary evidence extends to video evidence collected by corrections officers or installed surveillance equipment. *Piggie v. Cotton*, 344 F.3d 674, 678 – 79 (7th Cir. 2003); *Cannistraci v. Van Der Veur*, 106 F.3d 413 (10th Cir. 1997) (table).

Defendants Abbott and Ross argue they are entitled to summary judgment because there was no relevant video evidence to introduce at the hearing. The record evidence establishes that no video evidence existed. Defendants cannot violate Plaintiff's due process right to present evidence where Plaintiff has failed to demonstrate the existence of the evidence.

## IV. CONCLUSION

Based on the foregoing analysis, Plaintiff's Motion to Compel Discovery (ECF No. 97) is denied. In addition, I recommend the Court grant Defendants' Second Motion for

Summary Judgment (ECF No. 87) and enter judgment in favor of Defendants Abbott, Ross, Staples, Averill, and Court.

## NOTICE

Any objection to the decision on the motion to compel shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of November, 2017.